Good morning, Ms. Kuntzler. I see that you reserved two minutes for rebuttal. You can begin whenever you're ready. Thank you. May it please the Court, Sarah Kuntzler for Terrell Hendrix. Your Honors, this case turns on a core Sixth Amendment failure. Mr. Hendrix was required to litigate a motion to withdraw his guilty plea, a critical stage of his case, without counsel, after the Court deemed him to have waived that right without a knowing, intelligent, and unequivocal waiver. Later on, there was counsel appointed and the motion was repeated, right? That is true, but at that — Why doesn't that resolve the problem that you're raising? Well, it doesn't cure the violation. At that point, when the government argued in response to the relitigation of those issues, the government said, you don't even have to consider this, Judge, because you already considered it in the defendant's pro se submission. So the government said, ignore the counsel's submission, essentially. And when the Court gave its oral decision on the counsel's motion, the Court spent a lot of — it was a five-page oral decision. The Court spent a lot of time on the Bruin issue, that whether — But why isn't it harmed? Why doesn't the second proceeding amount to establish that the error before that, if there was error, was harmless? Well, the second proceeding was cursory, and it wasn't even a hearing. There wasn't even a hearing on the issue. As Your Honor, Judge Walker, as you ruled in U.S. v. Davis, which is a case we cite in our papers, that once a defendant has raised an issue that is so critical as this issue, right, the — you know, that he was coerced, right? He raised that he was coerced into taking — To go back to the harmlessness issue, you would agree that harmless error can apply in this situation as long as he was not unrepresented at a critical phase of the proceeding, correct? You would agree with that, that it's not structural in every case. We found harmless error when there's a Sixth Amendment violation of the right to counsel. I mean, it was structural when he did not have counsel. At a critical stage. Yeah, at a critical stage. But on Judge Walker's point, I had the same question, is the district court did not say when the counsel came in and filed another motion to withdraw, the district court, in its decision — you may say it's cursory, but it focused a lot on Bruin because that's what counsel focused on. Counsel did reassert this pressure argument that was asserted in the pro se filing, and the district court said, as the other grounds, you know, I deny on the other grounds. So the district court didn't indicate, like, I've already decided this. It's a higher standard review. This is a motion for reconsideration. There's every indication that the district court de novo looked at this, quote, unquote, issue of pressure and rejected it. So essentially, a government at this point, the pro se was almost like an extra motion that your client got to file that he would not have gotten to file if he had had counsel throughout. Isn't that the way we should look at it? Well, I would say that the district court never conducted a meaningful inquiry, so there's really no record on which harmlessness can be assessed. When, in the Davis case — Meaningful inquiry under FRERETA, you mean? Is that what you're talking about, or meaningful — under — on the motion to withdraw? I'm confused when you say meaningful inquiry. On what issue? Well, there was really — I mean, you know, there's — We're assuming you're right. Okay. If there was a FRERETA that did not comply with FRERETA and that there was not a sufficient basis to determine that his waiver of counsel was knowing and voluntary — Yes, Your Honor. — we're saying, but it's potentially harmless because he got counsel. The only thing that happened while he was self-representing — when he was representing himself was he filed a pro se motion to withdraw, and the judge gave him counsel back. Counsel filed a motion to withdraw on whatever grounds that counsel wanted to. There were no limitations on what he could raise, could raise things that his client had raised in the pro se motion. Counsel did, and it was rejected. So the argument would be, the government makes, is that this is harmless, even if there was a FRERETA violation. The government would argue it was harmless, and I would argue that it was a — that it was a cursory consideration of those issues, that it was — having been denied — But then this is the merits of whether or not it abuses discretion on the withdrawal motion itself, not on the FRERETA issue, right? But even — even on the FRERETA issue, Your Honors, there was — the court didn't address it orally in its ruling. The — and the court just said all other issues are fine — you know, were considered. I don't believe they looked at the issue already in connection with your client's filing. It did issue a written opinion, right, on the first motion, indicating why it believed that there wasn't a sufficient basis to believe the client was on drugs or their — the client was pressured. So it had issued a written decision on both of those issues, right? Well, the — the written decision that the court issued was without a hearing — I mean, on the allegations of — you know, it was without a hearing. These are allegations of a coerced plea. Unless it was a significant question, right? Right. Your client, in the plea proceeding, they went through whether he was on drugs or not. He said he had smoked marijuana four days earlier. He was on no other drugs or medication. It didn't affect his ability to understand. The judge made a finding that his observations were consistent with his ability to understand. He asked counsel, you met with your client this morning. Do you think your client understands? So that was on the drug issue. And then on the pressure issue, you know, I understand that it was a plea during trial, jury selection, and maybe it was only an hour to review the plea agreement, but that happens during trials, especially during jury selections. And the judge asked during the plea allocation a series of questions. Do you have enough time to read the plea agreement? Do you have enough time to discuss the plea agreement? Did anyone coerce you? Yeah. Why should we find it's an abuse of discretion when your client made all these statements under oath at the plea proceeding, and there's nothing to indicate that those sworn statements at the plea proceeding were incorrect, other than him now in an affidavit saying otherwise? The same was true in U.S. v. Davis, Your Honor. The defendant pled guilty at the last minute. There was an adequate colloquy. You know, the client, the defendant moved pro se to withdraw his guilty plea and argued that he had been coerced. And what this Court ruled is that at a critical stage such as this one, a plea withdrawal hearing is vital, right? That was the words of this Court, that when allegations of coercion are raised, right, that that's serious, because Any time there's an allegation of pressure in a plea, there has to be a hearing? Is that what you're suggesting? Well, you know, particularly here where it's a pro se defendant raising it, and there's no counsel to help them raise it. But, yes, I think when allegations this serious are raised, that, you know, that what's happening here is it's foreclosing a defendant's right to a trial, right? And in the face of an allegedly involuntary plea, this Court has held a plea withdrawing hearing is vital to ensure the integrity of the process by which guilt may be ultimately determined. That is a quote from Davis, right? That's not saying under the facts of this case. What that is saying is that in the face of this type of allegation, you know, that a plea withdrawal hearing is vital. And so that didn't occur. He raised it on his own. It was denied. He raised it with counsel, but he still didn't get, there still wasn't that meaningful inquiry. There was still no, you know, no hearing on whether it was, in fact, involuntary. He raised that it was. He said my lawyer forced me to do this. He said I was under pressure. He said, you know, and what testing of that happened? I mean, it may have been conclusory, but that, Your Honors, is what hearings are for. And I think that the initial denial of counsel here and his requirement that he argue this himself at a critical stage kind of led to, is the error that all of this flows from. Okay. We understand your position, and we reserve to your time. Thank you, Your Honors. Okay. We'll hear from the government. Ms. Slate. Good morning, Your Honors. May it please the Court. My name is Tiffany Lee, and I represent the United States on the appeal only. This is not a case involving the deprivation of rights conferred by the Sixth Amendment pertaining to representation. Rather, it is the complete opposite. Mr. Hendricks benefited and exercised the full scope of the Sixth Amendment. And what my opposing counsel keeps focusing on is this whole notion of the right to have representation, but a corollary of the Sixth Amendment is the right to self-representation. And any error in terms of the district court's Feretta inquiry cannot be shown to be anything but harmless beyond a reasonable doubt. Let me just ask you, before you get to the harmlessness, you do defend the district court, the sufficiency of the inquiry here, but there was no inquiry other than how old he was, his education, whether he was on drugs. There was all of what was suggested in Feretta and that we've suggested over and over again that in order to ensure that the waiver of your counsel, which is a big thing, is knowingly involuntary, there should be a discussion with the defendant about the consequences of doing that, the dangers of doing that. And you cite the case where we say there's no magic formula for that, but there was nothing. So we would be finding that nothing is enough. Your Honor, I don't think so. I don't think it is a finding of nothing is enough because this Court has recognized that the Court, reviewing Court, this Court should look at the totality of the circumstances here. And what you have is a finding that would be premised not only on his competency. This is the same district court that had just witnessed Mr. Hendricks participating in the plea colloquy where he completely understood the consequences of his plea. He understood what charges he was facing. That must mean someone understands what it's going to be like to represent yourself, right? True. On a completely different level, knowing intelligently waiving your right to a trial and knowing intelligently waiving your right to an attorney, I think that's why FREDA requires all those consequences, because just because someone pled guilty doesn't mean they understand that, right? And I think the district court was in the process of going through all of that, but it just so happened that during the entirety of that court appearance in which actually the district court had new appointed counsel at the ready, in which case he was asking Mr. Hendricks, do you want Mr. Covert? And then Mr. Hendricks said, no, I don't want, I don't want new counsel. You know, I reserve my rights. I want to represent myself. The district court didn't even make a finding that it was knowing intelligently. The district court said, I want to make sure it's unequivocal. And that's what the discussion was. Are you sure? But the knowing intelligently part of it, there was no finding on that. And after determining that he was sure that he wanted to represent himself, said, okay, you're representing yourself. And then he said, I think this is a bad idea, but you're representing yourself. So there wasn't even a finding that it was knowing intelligently. I think he – I agree that there was no finding. I think the district court, as I mentioned, was in the process of trying to do so. But due to Mr. Hendricks' own conduct during that court proceeding, he stopped short and the district court just said, okay, fine, you're representing yourself. And I agree with that it is less than the strong endorsement of Feretta warnings and what Feretta warnings require. However, in this case, it truly pivots on harmlessness of the error. And even were it structural, this court would be required to review that structural error under the framework of plain error analysis anyways. Here, Mr. Hendricks had – he moved to withdraw his guilty plea. And then shortly after the district court's decision and order, he indicated again that he would like the assistance of counsel to help him with the withdrawal of the guilty plea again. And he was appointed counsel. And counsel assisted and drafted a second motion to withdraw, which contains the same pressure allegations from the first motion and also inserted an actual viable, actual innocence argument at that time in the form of a Bruin argument. So when you're looking at all of that, it would be very hard-pressed to say that this was error that was not harmless beyond reasonable doubt or that even were it structural that this was an error that seriously affects fairness, integrity of the proceedings. Finally, Your Honors, the district court acted within its discretion when it denied Mr. Hendricks' motion to withdraw his guilty plea. This was a very thorough plea colloquy. The district court asked Mr. Hendricks a number of times, did you have enough time to go over your rights with your attorney, the rights that you'd be giving up? Did you have enough time to go over the terms of the plea agreement? And finally, did you have enough time to go over the matter with your counsel? And also, he was asked whether or not he was satisfied with counsel's representation. And at that time, Mr. Hendricks said yes. So accordingly, this Court should affirm the district court's denial of Mr. Hendricks' motion to withdraw his guilty plea, and it should affirm the judgment of conviction. Unless the Court has any further questions. All right. Thank you. Thank you. Okay. Ms. Constley, you have two minutes to revoke. Thank you, Your Honors. I think that you are correct that this was essentially no inquiry, that the court the district court was focused on whether his waiver was equivocal, was unequivocal. And here, the court wasn't even able to establish that, because even everything that my client said was equivocal. Do you want Mr. Covert to be your lawyer? No. Do you want to be your own lawyer? No. Okay. Like I said, I reserve all my rights. And then, Mr. Hendricks, you are your own lawyer. I mean, that is false, far short of a proceeding that establishes anything, you know, And, you know, I think that, you know, harmless error review does not apply to the denial of counsel at a critical stage. This was a critical stage, and it is structural error here. And, you know, this, you know, this is not a case where you can look at the totality of the circumstances and say that, and draw a different conclusion. It just isn't. You know, the totality of the circumstances leads you to one ultimate inescapable conclusion, which is that my client was denied counsel and denied counsel at a critical stage of his case where it mattered, where his, you know, where he raised serious allegations of coercion, which were never tested by the court. And where we have here now a serious violation of rights with lasting consequences for a person who was denied due process of law. All right. Thank you. Thank you both. We'll reserve the decision. Have a good day. Thank you.